THE STATE, EX REL. PAWLOWICZ, *v.* EDY, CITY
MANAGER, ET AL.

(Decided April 7, 1938.)

*Mr. Steven L. Markowski,* for relator.
*Mr. Martin S. Dodd,* director of law, and *Mr. J.
Slater Gibson,* for respondents.

OVERMYER, J.   This is an original action filed in this
court on March 23, 1938, by the relator seeking a writ
of prohibition addressed to the respondents, John N.
Edy as city manager of the city of Toledo, Ohio, E.
R. Samsey as secretary of the Department of Public
Safety of said city, and the city of Toledo, Ohio, pro-
hibiting them from hearing and determining charges
connected with the suspension of relator as a member
of the fire department of the city of Toledo, Ohio, an
employment or position in the classified civil service
under the charter of the city.

The petition charges that respondent, John N. Edy
as city manager of Toledo, Ohio, or respondent, E. R.

Samsey as secretary of the Department of Public Safety of the city, or both of them, are about to compel relator to appear and submit to a hearing of certain charges filed against relator as a member of the city fire department, and that by Section 143 of the charter of the city the director of public safety alone has exclusive authority to conduct such hearing, and that therefore the respondents, in their respective offices as city manager and secretary of the Department of Public Safety, are without any authority to conduct such hearing and render any judgment in the matter. A writ of prohibition is sought to enjoin respondents from proceeding further with the attempted hearing.

To the petition a general demurrer was filed by respondents which the court overruled as to the respondents Edy and Samsey and sustained as to the city of Toledo. *Dickey* v. *Brokaw*, 53 Ohio App., 141, 4 N. E. (2d.), 411; *State, ex rel. Nolan,* v. *ClenDening,* 93 Ohio St., 264, 271, 112 N. E., 1029; *State, ex rel. McCrehen,* v. *Brown, Secy. of State,* 108 Ohio St., 454, 141 N. E., 69; *Ex parte Jones,* 160 S. C., 63, 158 S. E., 134, 77 A. L. R., 235 *et seq.*

Thereupon respondents Edy and Samsey answered and set up four separate defenses, the first, third and fourth of which it is not necessary to discuss. In the second defense thereof it is alleged that on March 2, 1936, the council of the city of Toledo duly enacted an ordinance known as Ordinance 51-36, a copy of which is attached to the answer and the pertinent parts of which are as follows:

"An Ordinance No. 51-36. Empowering the city manager to act as director of the Department of Public Safety until council by appropriate action shall direct otherwise, and declaring an emergency.

"Be it ordained by the council of the city of Toledo:

"Sec. 1. That the city manager be and he is hereby empowered to act and serve in the capacity as direc-

tor of. the Department of Public Safety until council by appropriate action shall direct otherwise.

"Sec. 2.   That no extra compensation shall be paid to the city manager for service in the official capacity as set forth in Section 1 hereof, and in the aforesaid capacity said city manager shall be authorized and empowered to do and perform all acts and things and to enjoy all of the privileges which are provided by the charter of the City of Toledo, the statutes of the state of Ohio, and the ordinances of this council, for the aforesaid respective office.''

Section 3 thereof declares the ordinance to be necessary for the immediate preservation of the public welfare, safety and property, and it is declared to be an emergency measure.   The second defense of the answer then further states that pursuant to such ordinance the respondent Edy has been and now is acting as the director of the Department of Public Safety; that the ordinance was enacted by council under authority of Section 61-b of the charter of the city. Respondent Samsey denies that he at any time acts as the director of public safety.

A reply having been filed by relator, the cause was submitted to the court on the pleadings, an agreed statement of facts, certain pleaded and stipulated sections of the city charter, oral arguments and briefs, all of which we have given full consideration.

An examination of the ordinance pleaded in the second defense of the answer as above set forth, and of the charter provisions in evidence, convinces the court that the answer and the second defense thereof presents no different situation and calls for no different procedure than was presented under the demurrer to the petition.   The issue presented is: Does the charter of the city of Toledo authorize the council to empower the city manager by resolution, ordinance or otherwise, to assume the functions and perform the

duties of the administrative head of a department of the city government?

The city charter, in Section 101, establishes six separate administrative departments for the city government, viz:

1. Department of Law.
2. Department of Finance.
3. Department of Public Service.
4. Department of Public Safety.
5. Department of Public Welfare.
6. Department of Public Utilities.

Section 104 of the charter provides, in part, as follows:

"Sec. 104—*Directors of Departments—Powers and Duties.* A director of each department *shall be appointed by the city manager* to serve during the pleasure of the city manager. Each director shall have the supervision and control of his department, under and subject to the direction of the city manager." (Italics ours.)

The section then proceeds to set forth the duties and powers of the department heads.

Section 61 of the charter provides that "The council shall appoint a city manager who shall be the chief executive and administrative officer of the city," and then proceeds to define the manner of his selection, how he may be removed, how his salary is determined, etc., and Section 61 (a) provides:

"Neither the Council nor any of its committees or members shall interfere in any way with the appointment or removal of any of the officers and employees in the administrative service."

Section 61 (b) then prescribes the duties of the city manager and concludes by saying: "And to perform such other duties as may be prescribed by this charter or required of him by ordinance or resolution of the council," and it is the quoted language just given above upon which respondents rest their claims. The

provision quoted of course means "such other duties as may be required of him by ordinance or resolution of council" not inconsistent with or repugnant to the provisions of the charter, and the ordinance here involved and the power and authority thereby attempted to be conferred upon the city manager is clearly repugnant to and in conflict with the provisions of the charter above enumerated and other charter provisions in evidence. In the charter sections in evidence, the duties of the city manager are clearly defined, and nowhere therein is he authorized to perform the duties of the head of a department, but on the contrary he is specifically and exclusively empowered to appoint department heads, called "directors," and their functions and duties are clearly defined. Section 143 of the charter specifically provides that the chiefs of the divisions of fire and police in the department of public safety shall have exclusive authority to suspend officers and employees in their respective departments, and charges arising from such suspension shall be heard by the director of public safety.

The case made by the petition, the answer and the admitted facts is that the city manager is proceeding to sit as a *quasi*-judicial tribunal and hear and pass judgment on charges against relator without any authority whatever, not even under color of any right to do so. The ordinance upon which he stands and under which the city manager assumes to act in the matter, does not appoint or attempt to appoint a safety director—the council well knowing that under the charter no one but the city manager may appoint a safety director, or any administrative department head. The ordinance attempts to "empower the city manager to act and serve in the capacity as director of the department of public safety until council by appropriate action shall direct otherwise."

If council may do that and the ordinance is valid,

then the office of safety director must remain vacant and the city manager can not fill it (as he alone has power to do under Section 104 of the charter) until council pleases to repeal the ordinance, or "direct otherwise." The ordinance attempted, not to appoint a safety director, but to have the city manager act as safety director, in plain violation of the charter. It attempts to make the city manager act in a dual capacity, to perform the duties of two specifically separate offices under the charter. It attempts to place duites in the hands of its city manager which that official is not, by the terms of the charter, authorized to perform. It attempts to place in his hands, among others, certain *quasi*-judicial functions and powers (hearing charges in the fire and police departments and rendering judgment thereon) which the charter does not place in the hands of the city manager but specifically places in the hands of a department head, viz.: the director of safety. If council can do that— if it can empower the city manager to assume the functions and perform the duties of one department head—it may authorize and empower him to assume any or all of them, even the law department if he happens to be a lawyer. If that were the authority given by the charter to the council and assumed by the city manager, the offices and functions of city government he could assume would be limited only by his physical capacity to perform them. But council clearly cannot do this. It is forbidden by express provisions of the charter, and to say that such authority in council is implied is too fantastic to require discussion.

It must be borne in mind that the city charter is the organic law—the "constitution"—of the city of Toledo for the purpose of local self-government, and while the courts, in the interpretation of governmental powers under so-called "home rule" municipal government, have been liberal in respect to strictly local matters, yet no court has permitted the exercise of

any powers not granted in the charter, or powers contrary to or inconsistent with the plain provisions of the charter.

The city manager under the Toledo charter has only such jurisdiction and powers as are prescribed in the charter, and such as are conferred upon him by ordinances of council which do not contravene charter provisions. Section 61 of the charter, above discussed, defines the powers of the city manager as the administrative and executive head of the city, and paragraph B of that section, relied on by respondents for the authority they claim the right to exercise under Ordinance No. 51-36, authorizes the city manager, among other things, to *"supervise* the administration of the affairs of the city, *except as otherwise specifically provided in this charter, * * * to make* all appointments and removals in the administrative and executive service *except as otherwise provided in this charter."* (Italics ours.)

He is to *supervise* the affairs and offices of the city, not *perform* them; he is to make removals from the administrative and executive service *except as otherwise provided in the charter,* and it is otherwise provided as to the removal of a member of the division of fire under the department of public safety. Section 143 of the charter provides specifically that the chiefs of the divisions of police and fire shall have the exclusive right to suspend any of the officers or employees in their respective divisions, for incompetence, etc., and if any officer or employee be suspended as therein provided, the chief of division concerned shall certify the fact in writing to the director of public safety, and that official shall, within five days, proceed to "inquire" into the cause of such suspension, that is, have a hearing on it, and render "judgment" thereon, which "judgment," if the charge be sustained, may be suspension, reduction in rank or dismissal. This "judgment" is final, except that Section

144 permits an appeal to the civil service commission by the relator if the judgment of the safety director is adverse to him, and provides that the judgment of the commission is final. If, as the charter provides, the relator has no other appeal, then another reason exists why the remedy of writ of prohibition is proper in this case. Prohibition is the proper remedy where he is about to be subjected to a tribunal which is absolutely without power to hear the charges and without color of office to do so and where the ordinance involved does not even pretend to make the city manager the safety director, because it could not, but unlawfully attempts to confer upon the city manager powers of a *quasi*-judicial tribunal, i. e., safety director, in direct violation of the charter.

Section 61-b contains specific limitations upon the powers of appointment of the council and on the powers of the city manager, and Section 143 specifically provides the exclusive procedure in the matter of suspension of an employee of the divisions of police and fire. The charge shall be heard by the director of safety and judgment rendered thereon by that official, not by the city manager acting for that official or unlawfully authorized by council to perform the duties of that official.

With the matters set up in the third defense of the answer relating to the merits of the charges or cause for suspension of relator and the various notices served on relator in connection therewith, we have nothing whatever to do, nor do we inquire into the causes or purposes of the city manager and council in seeking to do what was attempted. Whether it was done for economic reasons or in harmony with the modern trend to consolidate power and authority, is beside the point. We have before us a strictly legal question which we are called upon to decide and are deciding under the law as we understand the law to be.

As said by this court in *City of Sandusky* v. *City Commission*, 56 Ohio App., 284, at 289, 11 N. E. (2d), 115:

"Within the sphere of the power and authority conferred upon municipalities by the Constitution of Ohio, the charter of an Ohio city adopted by the voluntary action of its electors, is its constitution, and there is no apparent reason why, until changed by act of its creator [the people of the city] the municipal authorities, who are the agents thereof, should not abide thereby. That to comply with the quoted portion of Section 15 of the charter [in the present case, Section 104 of the charter] would be expensive, and an outlay of money to no purpose, * * * is suggestive of a laudable personal desire to economize by proceeding otherwise, but not persuasive as to the power to do so."

There is another consideration involved which must not be overlooked, and that is the proposition that some system of checks and balances has been a fundamental principle of constitutional government in America since colonial days, and always zealously guarded by the people. The constitutions of the colonies, the federal Constitution, all state constitutions, and every form of municipal government, has preserved and guarded this principle, and it was sought to preserve it, at least to some extent, in the Toledo charter. Every vestige of that principle would be destroyed in the Toledo charter by judicial approval of the powers attempted to be exercised by council in the ordinance here involved and the authority assumed by the executive head of the city thereunder.

It is our conclusion that under the admitted facts the issue as set forth at the outset must be answered by saying that the charter of the city of Toledo does not authorize but specifically prohibits council from empowering the city manager or any one else, by reso-

lution, ordinance or otherwise, to assume the functions and perform the duties of an administrative head of a department of the city government; that its attempt so to do is a nullity and of no effect whatever; that there is no qualified official, viz., director of public safety, now in office to hear and determine said charges; that the claimed authority of respondent city manager to continue with the hearing of the charges against relator is wholly without authority or color of authority, and that the attempted hearing not having been held, prohibition is peculiarly the proper remedy in this case to secure the relief to which the relator is entitled, and that under the undisputed facts the writ should be, and therefore is, allowed.

*Writ allowed.*

LLOYD and CARPENTER, JJ., concur.